## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MJ Modern Trucking, Inc.,

           Plaintiff,

v.                         Case No. 1:23-cv-898-MLB

Love's Travel Stops & Country
Stores, Inc., and Speedco, Inc.,

           Defendants.

_____/

### OPINION & ORDER

Defendants Love's Travel Stops & Country Stores, Inc. and Speedco, Inc. move for summary judgment. (Dkt. 20.) Plaintiff MJ Modern Trucking, Inc. opposes. (Dkt. 22.) The Court **DENIES IN PART** Defendants' Motion.

## I.    Local Rule 56.1

The Court dislikes starting any order by noting the parties' shortcomings. But that is necessary here because the parties' failure to comply with Local Rule 56.1 in several ways limits the Court's

consideration of contested issues.[1]  To start, Plaintiff never filed its own statement of material facts but simply attached forty-four pages of exhibits and a ten-page affidavit to its response brief.  (Dkts. 22-1; 22-2.)[2] Local Rule 56.1(B)(2)(b), however, demands an independent statement of facts for this evidence.  Compliance with this rule is "the only permissible way for [a respondent] to establish a genuine issue of material fact" at the summary judgment stage.  *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008).  Plaintiff's failure to comply is no mere technicality, either.  *See Mann v. Taser Int'l*, 588 F.3d 1291, 1303 (11th Cir. 2009).  By not filing a separate pleading to assert these facts, Plaintiff deprived Defendants of their right to respond to the facts and evidence—a right protected by Local Rule 56.1(B)(3).  *See* LR 56.1(B)(3), NDGa ("If respondent provides a statement of additional material facts, then, within the time allowed for filing a reply, the movant shall file a response

---

[1] In their reply, Defendants request exclusion of Plaintiff's improper submission of evidence without an additional statement of material facts. (Dkt. 24 at 1–4.)  They should have filed a separate motion to do that. But the Court arrives at the same outcome because it rigorously enforces Local Rule 56.1.

[2] This is strange because, in its brief, Plaintiff referenced its own statement of material facts.  (Dkt. 22 at 2.)

to each of the respondent's facts."). Plaintiff's failure to follow the rules meant Defendants needed to incorporate any factual disputes within the page limitations of their reply brief. (Dkt. 24.) Considering Plaintiff's evidence (untested by proper objections) would encourage the very behavior Local Rule 56.1 seeks to end, like wasting judicial resources scouring scattered evidence. *Reese*, 527 F.3d at 1268 (emphasizing Local Rule 56.1's twin aims of protecting judicial resources and channeling litigation to genuine issues of material fact); *Hayes v. ATL Hawks, LLC*, 2019 WL 13059765, at *4 (N.D. Ga. Dec. 13, 2019) ("A district court need not hunt and peck for the relevant undisputed facts."). The Court thus disregards this evidence. LR 56.1(B)(1), NDGa ("The Court will not consider any fact: . . . (d) set out only in the brief and not in the movant's [or respondent's] statement of undisputed facts."); *Smith v. Mercer*, 572 F. App'x 676, 678 (11th Cir. 2014) ("A district court applying Local Rule 56.1 must disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of

undisputed facts—that yields facts contrary to those listed in the movant's statement." (internal quotation marks omitted)).[3]

Defendants also failed to follow the rules. Local Rule 56.1 says the Court will not consider any fact that is "supported by a citation to a pleading rather than evidence." LR 56.1(B)(1)(b), NDGa. That's because Rule 56(c) does not list pleadings as among the "materials in the record" parties may rely on to establish or dispute a fact. Fed. R. Civ. P. 56(c). Defendants ignore this. Many of their enumerated facts cite allegations from the complaint. (Dkt. 23 ¶¶ 1–3, 5–8, 10.) The Court will not allow parties to construct a factual background with complaint allegations, especially since the complaint was not verified and Defendants denied those facts in its answer. *Cf. Cote v. Countrywide Home Loans, Inc.*, 2010 WL 11646975, at *2 n.2 (N.D. Ga. Feb. 11, 2010) (considering as facts, despite Local Rule 56.1, admissions made in pleadings when the answer shows a litigant's admission of these facts). Defendants also include

---

[3] The Court recognizes *Mercer* is unpublished and not binding. The Court cites it and other cases nevertheless as instructive. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

improper legal arguments about the nature of Plaintiff's claims in its statement of facts.  (Dkt. 23 ¶¶ 12–13.)  *See* LR 56.1(B)(1)(b), NDGa (explaining that the Court will not consider any fact stated as a legal issue).  The Court ignores these improper facts.

Back to Plaintiff.  In its response to Defendants' statement of material facts, Plaintiff occasionally objects "to Defendants' narrative" of an exhibit or "Defendants' characterization of Plaintiff's claims and supporting evidence."  (*Id.* ¶¶ 4, 9, 22–23.)  Local Rule 56.1 does not permit these types of objections.  *See* LR 56.1(B)(2)(a)(2), NDGa (listing proper objections).  So the Court deems these facts admitted.  This determination (and Plaintiff's previously discussed failure to properly establish its own facts), however, does not absolve Defendants of their burden at summary judgment.  The Court must still review Defendants' citations to the record to "determine if there is, indeed, no genuine issue of material fact."  *Reese*, 527 F.3d at 1269 (Even if a non-movant fails to comply with Local Rule 56.1, courts must, "[a]t the least, . . . review all of the evidentiary materials submitted in support of the motion for summary judgment.").  Then, it must determine whether Defendants are entitled to judgment as a matter of law.  *See Mann*, 588 F.3d at 1303

(holding such failures to comply with Local Rule 56.1 render the motion a "functional analog of an unopposed motion for summary judgment").

## A.    The Facts the Court Considers at Summary Judgment

In the light of the Local Rule 56.1 non-compliance issues discussed above, the Court lays out the very few undisputed facts that it considers in assessing Defendants' motion for summary judgment.    And, to emphasize how few facts there are, the Court first reviews the complaint allegations.    In its complaint, Plaintiff generally alleges that, in July 2021, it brought two Freightliner tractor-trailers to two of Defendants' service centers for oil changes, that both trucks experienced new mechanical issues shortly afterward, and that subsequent mechanics determined the Defendants' mechanics had not properly secured the oil pans back on the trucks after performing the oil changes. (Dkt. 1-1 ¶¶ 13–28.)  But now—at the end of discovery and because of the parties' failure to abide Local Rule 56.1—the material facts for the issues raised at summary judgment include just four invoices for work on the trucks and Plaintiff's profit and loss statement for July 2021.  (Dkt. 23

¶¶ 4, 9, 23.)[4] That's it. No depositions. No expert reports. No evidence describing the parties, their business, or other relevant background information. And nothing about the tractor-trailers that supposedly malfunctioned, their specific features, or anything beyond the make and model of the truck. This leaves the Court little to work with in framing or considering the issues.

So here is what the Court determines is undisputed: On July 9, 2021, Defendants' mechanic center in Conley, Georgia invoiced Plaintiff for an oil change on a 2020 Freightliner tractor-trailer. (Dkts. 23 ¶ 4; 20-2 at 1–2.) The oil change cost $463.72, an amount Plaintiff apparently paid in full. (Dkts. 23 ¶ 4; 20-2 at 1, 3.) Then, on July 16, 2021, another service center opened a service request for the same truck (the parties say this is the same truck, but the invoices only depict the eight terminal digits of the VIN). (Dkts. 23 ¶ 4; 20-1.) This invoice noted the oil pan plug was "loose" and "confirmed there is a leak." (*Id.*) Although the service totaled $842.10 for this repair and many unrelated services

---

[4] Defendants' filing also properly includes undisputed facts from Plaintiff's initial disclosures (Dkt. 23 ¶¶ 11, 14–16) and about Plaintiff's refusal to designate an expert (*Id.* ¶¶ 18–20). But those don't really go into the resolution of Defendants' motion.

(Dkt. 20-1 at 4), no evidence (like a receipt) shows Plaintiff paid this amount.

On July 12, 2021, a Love's (Speedco) mechanic shop in Jackson, Georgia invoiced MJ Modern for an oil change costing $431.97 on a 2021 Freightliner.  (Dkts. 23 ¶ 9; 20-4 at 2.)  The receipt indicates someone paid the invoice, but the signature is impossible to read.  (Dkt. 20-4 at 1.) Three days later, a towing company delivered that tractor-trailer to a repair shop in Virginia, but little details exist on when, where, or why the truck broke down. (Dkts. 23 ¶ 9; 20-3.)  The Virginia repair shop charged $40,000 for some type of oil-system malfunction.  (Dkt. 20-3 at 1.) No evidence indicates whether anyone paid this invoice.

In 2023, Plaintiff sued Defendants, asserting seven state law claims: (1) breach-of-contract arising from the oil changes; (2) unjust enrichment for the same conduct; (3) conversion for the funds Plaintiff paid for the oil changes; (4) fraudulent misrepresentation arising out the oil changes they promised to provide; (5) negligent misrepresentation for the same; and (6) attorneys' fees.  (Dkt. 1-1 ¶¶ 30–39; 40–45; 46–53; 54–64; 65–72; 73–83; 84–85.)  Defendants moved for summary judgment. (Dkt. 20.)

## II.    Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). The nonmoving party then has the burden of showing summary judgment is improper by coming forward with "specific facts" demonstrating a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Salinero v. Johnson & Johnson*, 995 F.3d 959, 964 (11th Cir. 2021).

## III.    Discussion

Defendants claim that—as "an essential element of each claim"—Plaintiff alleges the oil change services Defendants provided "fell

below industry standards." (Dkt. 20-8 at 9.)[5]  They say they are entitled to summary judgment because Plaintiff's cannot show (1) a breach of that standard of care or (2) that any such breach proximately caused the alleged damages.  (*Id.* at 9–15.)  Defendants then claim Plaintiff's "lost income claim" is too speculative to succeed on any of the substantive claims as Plaintiff's rely on a single monthly profit and loss statement without any other evidence to show "income the trucks made before and after" the mechanical problems.  (*Id.* at 15–19.)  Finally, they contend Plaintiff cannot prove a genuine issue of material fact for its attorneys' fees and punitive damages claims without evidence of bad faith.  (*Id.* at 19–22.)

## A.   Defendants' Motion for Summary Judgment as to Whether Its Work Fell Below Industry Standards

Plaintiff denies the violation of an industry standard is "essential" to all its claims.  (Dkt. 22 at 4.)  For its breach of contract claim, it points

---

[5] Plaintiff initially alleged a claim for quantum meruit, and Defendants moved for summary judgment on it.  (Dkt. 20-8 at 9.)  Plaintiff never responded, and the Court deems it abandoned.  *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").  Plaintiff may have intended that as it did not mention this claim in its list of claims at summary judgment.  (Dkt. 22 at 1.)

to the service documents Defendants included at summary judgment. (Dkts. 20-2; 20-4.)   Plaintiff says Defendants agreed to provide oil changes on the trucks, that doing so required Defendants to torque all drain plugs, that Defendants did not do that, and that the failure to reinstall the plugs resulted in damage to the trucks.  (Dkt. 22 at 4–5.) More specifically, Plaintiff says that "[p]ursuant to the contract and with respect to the supplies, [Defendants were] primarily tasked with replacing drained oil with new oil, replacing filters, applying mechanical grease." (*Id.* at 4.)  Plaintiff further argues that "[w]ith respect to labor, [Defendants were] tasked with draining the existing oil, disposing of the old oil in an environmentally safe manner, torqueing [sic] all oil drain plugs, torqueing all transmission drain and fill plugs, torqueing all front and rear differential drain and fill plugs, torqueing all tire and wheel assembly lug nuts." (*Id.* at 4–5.)  Plaintiff says it argues negligence (the violation of industry standards) as an "alternative." (*Id.* at 4.)

That seems (somewhat) consistent with its breach of contract allegations in the complaint.  Plaintiff alleges that, when performing the oil changes, "both facilities failed to properly attach the oil pan[s]." (Dkt. 1-1 ¶ 34.)  Admittedly, Plaintiff alleges this fell below industry

standards. (*Id.*) But in the next paragraph, Plaintiff alleges "Defendants failed to provide the oil change services for which Plaintiff contracted." (*Id.* ¶ 35.) In other words, Plaintiff seems to allege a contract for an oil change that included the reattachment of the oil pan, that Defendants breached the contract by failing to do that, and that failing to do it also violated industry standards. That shows Plaintiff's breach of contract claim does not depend on "industry standards."

The Court acknowledges that elsewhere in the complaint Plaintiff alleged the mechanics working on the second truck "negligently failed" to secure the oil pan. (*Id.* ¶ 25.) And Plaintiff apparently stated that Defendants "negligently serviced" the trucks in its initial disclosures and that Defendants' work "fell below industry standards" in an interrogatory response. (Dkt. 23 ¶¶ 11, 16.) So Defendants' misreading of the contract claim may be understandable. But the Court is not aware of Defendants having used discovery to lock Plaintiff into their characterization of the contract claim as involving only negligence. The Court thus gives Plaintiff the benefit of this common sense reading of its complaint. By moving only regarding "industry standards," Defendants failed to move for summary judgment on the specific act the contract allegedly required:

reattachment of the oil pan by torquing the plugs.

Plaintiff's unjust enrichment claim contains similar allegations: that both facilities failed to attach the oil pans, that failing to do so violated industry standards, and that failing to do so (also) means Defendants did not provide the oil change services for which Plaintiff paid. (Dkt. 1-1 ¶¶ 44–45.) So Defendants' motion does not meet this allegation head on either.

A further analysis of the complaint undermines Plaintiff's contention as to the "essential" element even more. Plaintiff never mentions "industry standards" in its claims for conversion or fraudulent misrepresentation. For conversion, Plaintiff alleges Defendants failed "to provide the oil change services that they represented and warranted to plaintiff" and refused Plaintiff's demand for its money back. (*Id.* ¶ 50.) The fraudulent misrepresentation claim attacks Defendants' alleged representations as to qualifications of their mechanics, which Plaintiff says induced it to use Defendants' services and suffer damages. (*Id.* ¶¶ 56, 62.) Admittedly, Plaintiff's negligent misrepresentation claim alleges the services Defendants provided "fell below industry standards" without more generally alleging the failure to provide the oil change

services agreed upon. (*Id.* ¶ 70.) But that specific allegation is not an element of the claim. "A claim for negligent misrepresentation requires proof that: (1) the defendant negligently supplied false information to foreseeable persons, known or unknown; (2) such persons reasonably relied upon that information; and (3) economic injury proximately resulted from that reliance." *See Am. Casual Dining, L.P. v. Moe's Sw. Grill, LLC,* 426 F. Supp. 2d 1356, 1365–66 (N.D. Ga. 2006). So Plaintiff could recover simply by showing Defendants' mechanics were not as qualified as represented, that it relied on those negligent representations in using Defendants' services, and that Defendants damaged its trucks—which (as already explained) does not require a violation of industry standards.

Defendants' reply brief recognizes the discrepancy between their characterization of Plaintiff's "essential claim" and Plaintiff's characterization of its own claim. Defendants acknowledge that Plaintiff alleges a breach of a contract to provide maintenance services. (Dkt. 24 at 9.) They say, however, that "Plaintiff does not dispute that [Defendants'] technicians performed the routine maintenance services requested." (*Id.*) But that is precisely what Plaintiff argues Defendants

failed to do.  (*See* Dkt. 22 at 5 ("Defendants breached its contract with Plaintiff by failing to perform the services for which it was contracted, namely torquing all oil drain plugs.").)  Defendants want to rewrite the breach of contract claim as the failure to provide services that met industry standards so they can impose a "negligence" standard.  Plaintiff, however, says it alleges a much simpler breach—the failure to install or tighten the oil drain plugs—regardless of whether that also violates industry standards.  This may be a clearer enunciation of the contract claim than Plaintiff included in the complaint, but that is not an issue before the Court.   And again, Defendants apparently failed to pin Plaintiff to a simple explanation of its contract claim during discovery.

Furthermore, taking Plaintiff's response head on in their reply brief, Defendants also argue no evidence supports Plaintiff's claim that Defendants did not provide the contracted services, saying an affidavit provided at summary judgment was not enough. (Dkt. 24 at 10.)  Perhaps that's true.  It may be that Plaintiff's failure to file properly a statement of material facts would prevent Plaintiff from presenting evidence to show a material fact as to whether Defendants breached the contract in the way Plaintiff claims they did.  There may be no evidence, for example,

that Defendants failed to torque the drain plugs—an issue that would also go to causation for all Plaintiff's claims.[6]

To establish a breach and causation, for example, Plaintiff relies on an inference that Defendants' improper performance of oil service—the failure to secure the drain plugs—led to the mechanical failures in the oil-housing systems a few days later. (*See, e.g.*, Dkt. 22 at 5 ("[B]y failing to perform the [oil] services for which it contracted," Defendants breached the agreement, causing damages.), 11 (calling Defendants' causation argument "misguided" because of the short period between the servicing and failure).) All Plaintiff presents is evidence that two different Love's (Speedco) shops changed the oil on two different make/models of Freightliners in unknown conditions owned by Plaintiff, and that days or

---

[6] Another issue, while Plaintiff claims Defendants breached contracts by not torquing drain plugs (Dkt. 22 at 4–5), it's not clear that duty arose from the invoices. Read literally, they required Plaintiff to "verify and initial" that it "witnessed" Defendants performing those acts. (Dkts. 20-2 at 2; 20-4 at 2.) No one raised this issue. The Court understands that—in the absence of an express obligation to torque the plugs—Plaintiff may have to rely on a claim that Defendants' mechanics were required to do so under industry standards. And that might run headfirst into Defendants' claim that Plaintiff cannot show any such violation. But the briefs presented do not run the Court through those machinations, and the Court cannot do so on its own.

weeks later new invoices show those trucks suffered problems in the oil-housing system and arrived at service shops in different cities, suggesting the trucks were not stationary in the interim. (Dkts. 20-1–20-4.)   As in tort law, mechanical malfunctions in items, especially in commercial vehicles in frequent use, occur even absent carelessness. *See Ellis v. Sears Roebuck & Co.*, 388 S.E.2d 920, 921 (Ga. Ct. App. 1989) (noting "mechanical devices . . . get out of working order, and sometimes become dangerous and cause injury without negligence on the part of anyone"); *Ken Thomas of Ga., Inc., v. Halim*, 597 S.E.2d 615, 618 (Ga. Ct. App. 2004) (holding injuries caused by a dealership's loaner car that mechanically failed may occur absent negligence).[7] Perhaps an employee tinkered with the trucks, the screws naturally loosened in travel, or MJ Modern had the trucks serviced by someone else in the interim who failed to secure them or did something else.   Or perhaps some other mechanical issue in the Freightliners' engine unrelated to the oil-housing system led to the harm, especially if the

---

[7] In the light of this holding, the Court does not reach Defendants' alternative argument that Plaintiff must have produced expert testimony on the industry standard for all claims.  (Dkt. 20-8 at 10–12.)

trucks were in different conditions before the oil changes.

So it appears Plaintiff has significant problems establishing a breach and causation. But Defendants tie their breach of contract and failure of causation arguments to their industry standard allegation in their original motion. They, however, cannot change tactics in a reply brief. *See United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court."). And that's especially true when the pleadings "fairly disclosed" the matter. *Bank of Brewton v. Travelers Cos.*, 777 F.3d 1339, 1342 n.3 (11th Cir. 2015). In turn, the Court will not consider the quantum of evidence Plaintiff presented on breach and causation related to the alleged failure to torque the drain plugs. It only considers the arguments presented.

Defendants' reply brief presents several new arguments as to the other claims. They say, for example that there can be no conversion because "the funds paid to Defendants constituted compensation for the services rendered." (Dkt. 24 at 12.) Yet that is not the basis on which Defendants moved for summary judgment. Even more starkly, Defendants say Plaintiff's fraudulent and negligent misrepresentation

claims fail because Plaintiff "only cites to language on Defendants' websites as evidence" of the representations but "provides no evidence that even suggests, much less supports, that any representations by Defendants were materially false." (*Id.* at 13–14)  That would be a great argument—if Defendants had moved for summary judgment on the basis that none of its representations were false.  But they never did, so it is not.  Defendants also argue Plaintiff has not presented evidence showing Defendants' statements "induced Plaintiff to act." (*Id.* at 13.)  Again, a fair point if only Defendants had moved on that basis.

The Court denies Defendants' motion for summary judgment based on its argument Plaintiff failed to present evidence that Defendants' services fell below industry standard.

## B.   Defendants' Motion for Summary Judgment on Other Grounds

### 1.   Unjust Enrichment

"The theory of unjust enrichment applies when there is no legal contract and when there has been and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." *CasKim, LLC v. Carver Bible Coll., Inc.*, 2023 WL 11990857, at *9 (N.D. Ga. Feb. 8, 2023) (quoting *Smith Serv. Oil Co. v.*

*Parker*, 549 S.E.2d 485, 487 (Ga. Ct. App. 2001)). But an express contract precludes an unjust enrichment claim. *See id.* (citing *Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1413 (11th Cir. 1998) and *Tidikis v. Network for Med. Commc'n & Rsch. LLC*, 619 S.E.2d 481 (2005)).

Plaintiff does not seem to dispute this well-established rule and acknowledges its unjust enrichment claim can proceed only "if the Court does not find that a valid contract existed between the parties." (Dkt. 22 at 6.) Defendants argue (alternatively) that the Court should dismiss Plaintiff's unjust enrichment claim since the parties agree there was a contract. (Dkt. 24 at 11–12.) But the contract Defendants affirmed (requiring industry compliant services) is different from the contract Plaintiff alleges (for oil maintenance services that require the torquing of the drain plugs). It appears the parties may dispute the existence of a contract, and the Court thus denies Defendants' alternative argument for summary judgment on unjust enrichment. The Court can address the mutual exclusivity of these claims at trial.

### 2.   Attorneys' Fees

Plaintiff seeks attorneys' fees under O.C.G.A. § 13-6-11 on the grounds that Defendants acted in bad faith, were stubbornly litigious, and caused Plaintiff unnecessary trouble and expenses.   (Dkt. 1-1 ¶¶ 84–85, at 16 (Prayer for Relief).)   Each allegation is a separate basis for attorneys' fees under Georgia law.   O.C.G.A. § 13-6-11.   The first basis—bad faith—looks at a defendant's conduct in the underlying transaction from which the plaintiff's cause of action arose and asks whether the defendant acted with a dishonest purpose, moral obliquity, consciousness of wrongdoing, or sinister motive.   *Rapid Grp., Inc. v. Yellow Cab of Columbus*, 557 S.E.2d 420, 425 (Ga. Ct. App. 2001) (Bad faith "must result from some interested or sinister motive . . . [it] is not simply bad judgment or negligence, but it imports a dishonest purpose or some moral obliquity, and implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will.").   The second two—stubborn litigiousness and causing unnecessary trouble and expenses—look at a defendant's conduct in the litigation and asks whether the defendant adopted a "so sue me attitude" with no valid reasons to deny liability.   *Brown v. Baker*, 398 S.E.2d 797, 799 (Ga. Ct.

App. 1990).  The existence of a bona fide controversy between the parties as to liability or damages precludes the recovery of attorney's fees for either stubborn litigiousness or the causing of unnecessary trouble and expenses.  *Id.*  While issues of bad faith, stubborn litigiousness, and causing unnecessary trouble and expenses "are generally questions for a jury to decide, . . . if there is no evidence of bad faith or stubborn litigiousness, a court should grant a defendant's motion for summary judgment on a claim for attorney fees." *Copeland v. Home Grown Music, Inc.*, 856 S.E.2d 325, 333 (Ga. Ct. App. 2021).

Elaborating on the "transaction" evidenced in its produced invoices, Defendants argue Plaintiff has produced no evidence supporting its claim for attorneys' fees because no evidence shows bad faith on their part in performing the mechanical services, and a bona fide controversy about Plaintiff's claims precludes a finding of stubborn litigiousness or causing unnecessary expense.  (Dkt. 20-8 at 19–22.)  Citing evidence the Court does not consider (including an affidavit attached to its summary judgment brief), Plaintiff asserts Defendants have been "stubbornly litigious" by failing "to take substantial steps to resolve the damages they

caused to [it] due to their failure to torque the oil drain plugs on both [t]rucks." (Dkt. 22 at 12–13.)

The Court agrees with Defendants that Plaintiff has not presented evidence from which a jury could conclude Defendants acted in bad faith or unjustifiably defended these claims. Indeed, in the light of the apparent lack of evidence on conduct connecting them to the harm, no reasonable jury could blame Defendants for their refusal. So the Court grants Defendants summary judgment on Plaintiff's claim for attorneys' fees.

### 3. Punitive Damages

Under Georgia law, punitive damages are not recoverable in actions for breach of contract. *See* O.C.G.A. § 13-6-10 ("Unless otherwise provided by law, exemplary damages shall never be allowed in cases arising on contracts."); *Paul Dean Corp. v. Kilgore*, 556 S.E.2d 228, 234 (Ga. Ct. App. 2001) ("It is axiomatic that punitive damages are not recoverable for breach of contract, even if the breaching party acted in bad faith."). To recover punitive damages arising from tort, a plaintiff must present "[c]lear and convincing evidence of a defendant's 'willful misconduct, malice, fraud, wantonness, oppression, or that entire want

of care which would raise the presumption of conscious indifference to consequences" justify punitive relief. O.C.G.A. § 51-12-5.1(b). "Negligence, even gross negligence, is inadequate to support a punitive damage award . . . . Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage." *Brooks v. Gray*, 585 S.E.2d 188, 189 (Ga. Ct. App. 2003) (alterations in original) (internal quotation marks and citation omitted).

Defendants say that, even if they failed to provide the services required, no evidence suggests they acted in a manner to permit punitive damages under Georgia law. (Dkt. 20-8 at 22.) Plaintiff does not respond to this argument. Plaintiff's failure to respond to Defendants' summary judgment arguments regarding this claim constitutes abandonment and warrants the entry of summary judgment for Defendants. *Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004). So the Court grants summary judgment on this claim.

### 4.   Lost Profits

Under Georgia law, lost profits "'are [generally] not recoverable as they are too speculative, remote, and uncertain.'" *Lowe's Home Ctrs., Inc.*

*v. Gen. Elec. Co.*, 381 F.3d 1091, 1096 (11th Cir. 2004) (citation omitted).
Georgia law draws a hard line on these damages: "unless the lost profits
are capable of definite ascertainment, and are traceable directly to the
acts of the other party, they are not recoverable." *Kingston Pencil Corp.
v. Jordan*, 154 S.E.2d 650, 653 (Ga. Ct. App. 1967). There is, however,
an exception "when lost profits are capable of 'reasonably accurate
computation,' such as when the damages belong to 'an established
business with clearly defined business experience as to profit and loss.'"
*Id.* (citation omitted). Citing Plaintiff's generic, single profit and loss
statement, Defendants say Plaintiff's claim for lost income is too
speculative to continue because the evidence Plaintiff presented "does not
prove lost profits in any way." (Dkts. 20-8 at 17; 24 at 11.)[8] To be fair,
Plaintiff also produced an affidavit from a dispatch manager attesting
that, among other things, the profit and loss statement is accurate, and

---

[8] Plaintiff never really responded to this argument, either, summarily
concluding "Plaintiff experienced a loss of revenue of $40,900, which is
supported by its Profit and Loss Statement." (Dkt. 22 at 6.) None of that
disputes Defendants' point that such evidence is too speculative as a
matter of law. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681
(11th Cir. 2014) (Abandonment occurs when someone "either makes only
passing references to [a claim] or raises it in a perfunctory manner
without supporting arguments and authority.").

that Plaintiff lost revenue of $40,900 because it could not operate one of the trucks while its engine was being replaced because of Defendants' faulty work. (Dkt. 22-2 ¶ 50.) But the Court does not consider that affidavit. That single statement falls far short of decisions allowing this recovery. *See, e.g.*, *Signsation, Inc. v. Harper*, 460 S.E.2d 854, 857 (Ga. Ct. App. 1997) (finding sufficient evidence for lost profits when litigant submitted monthly profits, losses, and expenses charts over an eight-month period). And no reasonable jury could find a "proven track record of profitability" from that rudimentary document. *Stern's Gallery of Gifts, Inc. v. Corp. Prop. Invs., Inc.*, 337 S.E.2d 29, 35 (Ga. Ct. App. 1985). So the Court grants summary judgment.

## IV.  Conclusion

The Court thus **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment. (Dkt. 20.) The Court **GRANTS** that motion only regarding Plaintiff's claims for attorneys' fees, punitive damages, and lost profits.

**SO ORDERED** this 27th day of March, 2025.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE